IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KENNETH D. BIGGERS,**

        Plaintiff,                      Case No. 2:05-CV-1156

    v.

                                         JUDGE EDMUND A. SARGUS

**JUDGE MIKE LOWE,** *et. al.*,            Magistrate Judge Norah McCann King

        **Defendants.**

**REPORT AND RECOMMENDATION**

Plaintiff Kenneth D. Biggers, a state prisoner, brings this action under 42 U.S.C. § 1983 ("Section 1983") alleging that he has been denied his rights under the Constitution of the United States during the course of his arrest on April 11, 2004. Only the claims of excessive force and denial of medical care remain. *See Order*, Doc. No. 7. This matter is before the Court on *Defendants Washington County Sheriff's Office's and Larry Stephens' Motion for Summary Judgment* (*"Washington County Defendants' Motion"*), Doc. No. 36, and *Motion for Summary Judgment on Behalf of Defendants Morgan County Sheriff's Department, Thomas C. Jenkins Sr., Thomas C. Jenkins Jr., Deputy Paul Raven, Jeff Gillespie, Sergeant Douglas McGrath, Deputy James Huggins, Deputy Sullivan* (*"Morgan County Defendants' Motion"*), Doc. No. 37.[1] For the reasons set forth below, it is **RECOMMENDED** that *Defendants' Motions* be **GRANTED**.

---

[1]These two motions will be referred to collectively as *"Defendants' Motions"*.

**I.     FACTS ALLEGED**

Plaintiff was arrested on April 11, 2004.  Plaintiff alleges that he was subjected to excessive force when defendant Washington County Chief Deputy Larry Stephens fired a taser at plaintiff in effecting the arrest.  *Amended Complaint*, Doc. No. 6, at 2.  After plaintiff's arrest, he was treated at the scene for a laceration on his left hand caused by the taser dart.  *Id*.  Plaintiff complains that no further medical treatment was provided.  *Id*. at 4.  Plaintiff was then transported to the Nelsonville Regional Jail by Morgan County deputies.  *Id.* at 2.  Plaintiff alleges that all defendants were acting in concert or conspiracy.  *Id*. at 4.

**II.    STANDARD OF REVIEW**

   **A.    *Pro Se* Litigants**

In this case, plaintiff is proceeding without the assistance of counsel.  A *pro se* litigant's pleadings are to be construed liberally and are held to a less stringent standard than are formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520-21(1972); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A court should make a reasonable attempt to read the pleadings of a *pro se* litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.  *Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 749 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  "This standard does not mean, however, that *pro se* plaintiffs are entitled to take every case to trial."  *Id.* (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)).  "Indeed, courts should not assume the role of advocate for the *pro se* litigant."  *Id.* (citing *Hall*, 935 F.2d at 1110).  It is with this standard in mind that the instant motions will be decided.

### B. Summary Judgment

The standard for summary judgment is well established. This standard is found in Fed. R. Civ. P. 56, which provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Pursuant to Rule 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ.

P. 56(e)).  "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'"  *Glover v. Speedway Super Am. LLC,* 284 F. Supp.2d 858, 862 (S.D. Ohio 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).).

**III.    ANALYSIS**

Plaintiff brings this action under Section 1983, which provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.  To prevail on a claim under § 1983, a plaintiff must show that (1) a person (2) acting under color of state law (3) deprived him of rights secured to him by the United States Constitution or its laws.  *Waters v. City of Morristown,* 242 F.3d 353, 358-59 (6th Cir. 2001).  Because Section 1983 is a vehicle for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A.    Claim of Excessive Force**

Plaintiff's claim that defendant Stephens used excessive force in tasering him in effecting plaintiff's arrest on April 11, 2004, falls under the protections guaranteed by the Fourth Amendment to the United States Constitution.  The United States Supreme Court has held that

the Fourth Amendment guarantee against unreasonable search and seizures applies to the degree of force that law enforcement officers use in the course of an arrest. *Graham v. Connor et. al.*, 490 U.S. 386, 394-95 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).

In determining whether the force used in effecting an arrest is reasonable, courts balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Garner*, 471 U.S. at 8). In order to determine the reasonableness of the force used, a court must evaluate the specific facts of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The reasonableness standard to be utilized is objective rather than subjective. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968)). In applying this objective standard, the Supreme Court has stated that it "must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

The parties agree that defendant Stephens used a taser against plaintiff after plaintiff began to exit the house. *Amended Complaint* at 2; *Thomas Jenkins' Affidavit* (*"Jenkins' Affidavit"*), Doc. No. 46, at ¶12; *Larry Stephens' Affidavit* (*"Stephens' Affidavit"*), attached as Exhibit B to *Washington County Defendants' Motion*, at ¶ 16. It is uncontroverted that Morgan County Sheriff deputies responded to a report that plaintiff had threatened his neighbor with a

5

gun and that a gun had been discharged from the home that plaintiff had entered. *Jenkins' Affidavit* at ¶¶ 3, 4, 6, 7. Officers attempted to persuade plaintiff to exit the house and surrender to law enforcement officers, but plaintiff refused. *Id.* at ¶ 9. The standoff lasted for approximately 2 ½ hours. *Id.* at ¶ 15. Defendant Stephens, a Washington County Sheriff Deputy, was called to the scene. *Stephens' Affidavit* at ¶ 4. Morgan County Sheriff deputies advised Stephens of the following information: (1) plaintiff "had barricaded himself inside his home and refused to come out," (2) plaintiff "had either shot at or near one of the neighbors," (3) plaintiff "had made threatening statements towards the Morgan County Sheriff deputies on the scene," (4) plaintiff "had weapons inside the house," and (5) plaintiff "was intoxicated." *Id.* at ¶¶ 7, 8, 10, 11, 12. Eventually, plaintiff emerged from the house. Defendant Stephens fired the taser at plaintiff when plaintiff turned around and attempted to reenter the house. *Id.* at ¶¶ 15, 16. *See also Jenkins' Affidavit* at ¶ 12.

Defendant Stephens' actions, under the circumstances described above, were not so unreasonable as to amount to excessive force in violation of the Fourth Amendment. The uncontroverted facts establish that plaintiff had refused to come out of the house for more than two hours, conduct on plaintiff's part that certainly qualifies as resisting arrest. Stephens had been informed that plaintiff was intoxicated and armed and that plaintiff had made threatening statements to other officers at the scene. Although plaintiff had finally emerged from the house, he appeared to reenter the house. Defendant Stephens' action in firing the taser was reasonable under the circumstances and therefore did not amount to excessive force in violation of the Fourth Amendment.

  **B.**  **Claim of Denial of Medical Care**

Plaintiff acknowledges that some medical care was administered at the scene, but complains that "[t]here was no follow-up medical care given [to the wound on his left hand], only an alcohol pad to wipe the wound suffered by the Taser dart." *Amended Complaint* at 4. Plaintiff's claim that he was denied medical care implicates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The Fourteenth Amendment guarantees protection to individuals against arbitrary action by the government. "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (citing *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). The cognizable level of executive abuse of power is that which "shocks the conscience." *Id.* The United States Supreme Court has held that "[t]he Due Process Clause ... require[s] the responsible government or governmental agency to provide medical care to persons ... who have been injured while being apprehended by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Hence, "deliberate indifference" to the serious medical needs of pretrial detainees is sufficiently shocking to constitute a substantive due process violation. *Id.* The deliberate indifference standard requires that the defendants know of and yet disregard a substantial risk of serious harm to a detainee's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 835-37 (1994).

Even accepting as true plaintiff's factual assertions related to the lack of follow-up medical care he received for his wounded hand, plaintiff has simply not stated a substantive due process claim cognizable under the Fourteenth Amendment. Plaintiff describes that, on April 11, 2004, immediately after his arrest, he "was taken to an awaiting EMS vehicle ... to be treated for a laceration on the LEFT hand as a result of the taser dart." *Amended Complaint* at 2 (emphasis

in original).  Plaintiff does not allege any facts or present any evidence that would suggest that defendants acted with deliberate indifference to his serious medical needs.  Plaintiff received prompt medical attention for the taser dart wound, and he offers no specific information that would suggest that the medical care administered at the scene was inadequate or that additional medical care was warranted.  Similarly, plaintiff offers no evidence that there was a substantial risk of serious harm to his health.  *See Farmer*, 511 U.S. at 835-37.  At most, plaintiff's complaint reflects a disagreement on his part with the treatment actually administered by medical personnel.  However, the United States Court of Appeals for the Sixth Circuit has distinguished between cases where a prisoner has received no medical care and those where the prisoner claims that he did not receive adequate treatment.  *Westlake v. Lucas*, 537 F.2d 857, 660 (6th Cir. 1976).  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id*.

Moreover, plaintiff does not allege that any of the remaining named defendants caused the claimed denial of medical care.  *See Waters*, 242 F.3d at 358-59.  For all these reasons, then, the Court concludes that plaintiff has not raised a genuine issue of material fact with regard to his claim that he was denied appropriate medical care for the taser dart wound to his hand.  Accordingly, *Defendants' Motions* in this regard are meritorious.

Plaintiff argues that he should be allowed more time for discovery and appointment of counsel in order to respond to *Defendants' Motions*.  *See generally Plaintiff's Opposition to the Defendants' Motion for Summary Judgment*, Doc. No. 41; *Plaintiff's Motion for Defendants' Summary Judgment to Be Overruled and/or Set Aside, etc.*, Doc. No. 47.  However, plaintiff

does not specify the additional discovery necessary to support his claims, and he fails to explain how "doctor records as well as the jail reports" would support either claim. "[A] party cannot avoid summary judgment on the basis of nebulous assertions" that more discovery time would have produced evidence to defeat summary judgement. *Gordon v. Barnes Pumps, Inc.*, 999 F.2d 133 (6th Cir. 1993) (citing *First National Bank v. Cities Service Co.*, 391 U.S. 253 (1968)). Moreover, plaintiff does not explain why he did not conduct discovery that he believed was necessary to respond to *Defendants' Motions*. In any event, plaintiff has made a number of filings in response to *Defendants' Motions*. *See* Doc. Nos. 41, 47, 48. Under these circumstances, the Court concludes that plaintiff's request for additional time to conduct discovery and for the appointment of counsel are without merit and should not serve to delay consideration of *Defendants' Motions*.

Based on the foregoing, even when viewing the evidence in the light most favorable to plaintiff, the evidence is such that no reasonable jury could return a verdict for plaintiff on his claims of excessive force and denial of proper medical care. *See Anderson*, 477 U.S. at 248. **WHEREUPON**, the Court **RECOMMENDS** that *Defendants' Motions for Summary Judgment*, Doc. Nos. 36 and 37, be **GRANTED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation*, and the part thereof in question, as well as the basis for the objection thereto. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). Responses to objections must be filed within ten (10) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and*

*Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *Harris v. City of Akron,* 20 F.3d 1396 (6th Cir. 1994); *Smith v. Detroit Fed'n of Teachers, Local 231, Am. Fed'n of Teachers, AFL-CIO,* 829 F.2d 1370 (6th Cir. 1987).

|  |  |
|---|---|
| July 17, 2007<br>Date | s/Norah McCann King<br>Norah M$^c$Cann King<br>United States Magistrate Judge |